**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 16, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DARRELL BELLAMY,

Defendant-Appellant.

No. 04-5145

(N.D. of Okla.)

(D.C. Nos. CV-04-303-C and
00-CR-126-C)

# ORDER

Before **KELLY** , **O'BRIEN** , and **TYMKOVICH** , Circuit Judges.

**TYMKOVICH** , Circuit Judge.

Defendant-Appellant Darrell Bellamy, a federal inmate appearing pro se,

seeks a certificate of appealability (COA) allowing him to appeal the district

court's order denying relief pursuant to 28 U.S.C. § 2255. [*] Bellamy also recently

---

[*] After examining the briefs and the appellate record, this three-judge panel
has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

filed supplemental authority seeking relief under *United States v. Booker*, 125 S. Ct. 738 (2005). Because we agree with the district court that Bellamy has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we deny the COA. We also deny Bellamy's *Booker* claims. We hold that *Booker* does not apply retroactively to criminal cases that became final before its effective date of January 12, 2005.

## Background

On July 13, 2001, Bellamy was indicted for drug conspiracy in violation of 21 U.S.C. § 846, conspiracy to launder money in violation of 18 U.S.C. § 1956, engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, and criminal forfeiture in violation of 18 U.S.C. § 982. He pled guilty to one count of drug conspiracy and two counts of conspiracy to launder money. On April 17, 2003, the district court for the Northern District of Oklahoma sentenced Bellamy to 384 months imprisonment for drug conspiracy and 240 months for conspiracy to launder money, with the sentences to run concurrently. The judgment was entered on April 29, 2003. Bellamy did not file a direct appeal with the Tenth Circuit, but filed a motion pursuant to 28 U.S.C. § 2255, making two claims of ineffective assistance of counsel and one claim based on the Supreme Court's decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). He later filed supplemental authority seeking relief under *Booker*.

## Analysis

### I. Ineffective Assistance of Counsel Claims

Bellamy raises two claims of ineffective assistance of counsel. First, he alleges that in convincing him to enter into the plea agreement, his attorney inaccurately assured him the government would recommend a 25-year (300 month) prison term. Second, he alleges his attorney failed to challenge factual allegations used to enhance his sentence.

This court may issue a COA and entertain Bellamy's appeal only if he meets the requirements of 28 U.S.C. § 2253(c)(2). To do so, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). Our role is to conduct an "overview of the claims in the habeas petition and a general assessment of their merits." *Id.*

To succeed on a claim of ineffective assistance of counsel, Bellamy must satisfy the well-known standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Bellamy must first show his attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the

-3-

defendant by the Sixth Amendment." *Id.* at 687. Second, Bellamy must show the deficient performance prejudiced the defense. *Id.*

We agree with the district court that Bellamy's claims do not satisfy the *Strickland* test. Regarding his first claim, Bellamy offers no evidence in support of his allegation that his attorney incorrectly assured him the government would recommend a shorter prison term than he ultimately received. The government provided copies of correspondence between Bellamy and his attorney as well as a sworn affidavit from Bellamy's attorney, both of which establish the attorney fully explained to Bellamy that any relief offered by the government would be dependent on the government's assessment of the extent of his cooperation, and any reductions recommended by the government would not be binding on the court. As the district court explained, Bellamy's attorney documented each of his meetings with Bellamy and we find nothing in this record to support Bellamy's current accusation.

Bellamy's second claim is similarly deficient. Bellamy's attorney furnished the district court with a letter he sent to Bellamy, in which he informed Bellamy of the facts the probation officer would rely upon in calculating Bellamy's sentence. The attorney specifically warned Bellamy that Bellamy would have to advise him immediately if there was any credible countervailing evidence to rebut the presentence report, or if Bellamy wanted to submit the evidence at the time of

sentencing. The attorney then reviewed the presentence report with Bellamy, and Bellamy did not suggest any basis upon which to challenge its factual assertions.

In these circumstances, no reasonable jurist could conclude that Bellamy's counsel was ineffective under *Strickland*. Accordingly, Bellamy has failed to show a denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2), and we must deny COA.

## II. Blakely & Booker Claims

Bellamy argues his sentence is unconstitutional under the Supreme Court's recent sentencing decisions, for two reasons. He first argues his sentence violates *Blakely v. Washington*, 124 S. Ct. 2531 (2004), because when the district court calculated his sentence it relied upon allegations made by the government but neither admitted by Bellamy nor proven beyond a reasonable doubt. In the wake of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), Bellamy also filed supplemental authority claiming *Booker* sentencing error. We conclude that neither *Booker* nor *Blakely* is retroactively applicable to Bellamy's case.

Generally speaking, a new rule of criminal procedure "will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion). Applying this principle, we have previously determined that *Blakely* provides a

new rule of criminal procedure and is not subject to retroactive application on collateral review. *See United States v. Price*, 400 F.3d 844 (10th Cir. 2005). In other words, *Blakely* does not apply retroactively on collateral review to convictions that were already "final" at the time the case was decided by the Supreme Court on June 24, 2004. *Id.*

The finality requirement of *Teague* looks to whether the availability of a direct appeal has been exhausted and whether the time for filing a petition for certiorari has elapsed. *See Teague*, 489 U.S. at 295 (explaining the Court has defined "final" to mean "the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed") (internal quotations omitted); *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994). In this case, the district court entered its judgment on April 29, 2003, and Bellamy did not pursue a direct appeal. Thus, his conviction and sentence became final following the ten day window to appeal his case to this court, or May 9, 2003. *See* Fed. R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after the later of: (i) entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal."). Accordingly, Bellamy's case was "final" for purposes of retroactivity analysis approximately thirteen months before the Supreme Court

-6-

decided *Blakely* on June 24, 2004, and his argument is foreclosed by our decision in *Price* .

As to Bellamy's *Booker* argument, this circuit has already held that "*Booker* may not be applied retroactively to second or successive habeas petitions" under 28 U.S.C. § 2255. *Bey v. United States,* 399 F.3d 1266, 1269 (10th Cir. 2005). We now join all other circuits that have examined the question and conclude *Booker* does not apply retroactively to initial habeas petitions such as Bellamy's.[1] As an initial matter, every court to examine the issue has concluded that *Booker* represents a "procedural rule."[2] We therefore apply *Teague*'s familiar three-step

---

[1]*See, e.g.*, *Guzman v. United States*, 404 F.3d 139, 142 (2d Cir. 2005) ("The several courts of appeals that have considered the retroactivity question have held that *Booker* is not retroactive . . . [w]e agree.") (citations omitted); *Lloyd v. United States*, 407 F.3d 608, 610 (3rd Cir. 2005) ("All courts of appeals to have considered the issue of whether the rule of law announced in [*Booker*] applies retroactively to prisoners who were in the initial § 2255 motion stage as of the date that *Booker* issued have concluded that it does not. We now join those courts."); *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005) ("[W]e conclude that *Booker*'s rule does not apply retroactively in collateral proceedings[.]"); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) ("*Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005."); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005) (per curiam) ("[W]e conclude that *Booker*'s constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review.").

[2]*See e.g.*, *McReynolds*, 397 F.3d at 480-81 (7th Cir. 2005). As the Seventh Circuit explained, *Booker* is a procedural rule because it is concerned with the "identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful." *Id.* (internal citations omitted). In short, no conduct that was forbidden before *Booker* is

(continued...)

analysis. First, we determine the date on which the defendant's conviction became final. Next, we consider whether a court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule the defendant seeks was required by the Constitution. If not, then the rule is new. If we determine the rule is new, we then determine whether the rule nonetheless falls within one of the two narrow exceptions to the *Teague* doctrine. *See O'Dell v. Netherland*, 521 U.S. 151, 156-57 (1997).

The exceptions to *Teague* apply to (1) new rules "forbidding criminal punishment of certain primary conduct and rules prohibiting a certain category of punishment for a class of defendants because of their status or offense"; and (2) new rules that present "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 157 (internal quotations omitted).

Applying *Teague* to this case, we first note that Bellamy's conviction and sentence were final on May 9, 2003, approximately twenty months before the Supreme Court issued *Booker* on January 12, 2005. Second, it is clear *Booker* represents a new rule under *Teague*. In general, a case announces a new rule

_____

[2](...continued)
permitted today.

"when it breaks new ground or imposes a new obligation on the States or the Federal Government"; as such, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301. For substantially the same reasons we concluded in *Price* that *Blakely* represented a new rule, we find a new rule was announced in *Booker*. *See Price*, 400 F.3d at 848-49 (holding *Blakely* represents a new rule because at the time the defendant's convictions became final, a court would not have felt compelled to conclude the *Blakely* rule was constitutionally required). This conclusion is hardly controversial; every other circuit to consider the question has reached the same answer. *See Guzman v. United States*, 404 F.3d 139, 142 (2d Cir. 2005) ("Since Booker announced a new rule, we must decide whether either of the *Teague* exceptions to nonretroactivity applies."); *Lloyd v. United States*, 407 F.3d 608, 612 (3rd Cir. 2005) ("[T]he parties [do not dispute] the *Booker* rule constituted a new rule of criminal procedure for purposes of *Teague* [and we] agree."); *Humphress v. United States*, 398 F.3d 855, 861 (6th Cir. 2005) (stating that the "*Booker* rule" is "clearly new").

Because *Booker* announces a new rule for constitutional purposes, we must next examine whether it meets an exception to the *Teague* analysis. As we explained in *Price*, the first exception applies to a new rule that "places certain kinds of primary, private individual conduct beyond the power of the criminal

-9-

law-making authority to proscribe." *Price*, 400 F.3d at 848 (quoting *Teague*, 489 U.S. at 307). This exception is inapplicable here for substantially the same reasons it was inapplicable to *Blakely*. *See Price*, 400 F.3d at 848 (holding that "although the Court sometimes referred to rules . . . falling under Teague's first exception, they are more accurately characterized as substantive rules not subject to *Teague*'s bar . . . *Blakely*'s rule does not implicate this category of rules, whether we call those rules substantive, rather than procedural, or procedural rules falling under *Teague*'s first exception") (internal quotations omitted). To put it differently, *Booker*, like *Blakely*, did not add or remove any conduct from the realm of criminal offenses. *See also Humphress*, 398 F.3d at 862 ("Because this exception is clearly inapplicable, we proceed directly to our analysis of *Teague*'s second exception."); *United States v. Mora*, 293 F.3d 1213, 1218 (10th Cir. 2002) (holding *Apprendi v. New Jersey*, 530 U.S. 466 (2000) does not implicate *Teague*'s first exception).

As to the second *Teague* exception, the Supreme Court has previously determined that a change in the law requiring that juries, rather than judges, make the factual findings on which a capital sentence is based did not announce a watershed rule of criminal procedure. *See Schriro v. Summerlin*, 124 S. Ct. 2519, 2524-26 (2004) (holding that *Ring v. Arizona*, 536 U.S. 584 (2002) did not announce a watershed rule). The same logic applies to *Booker*, which, like *Ring*,

applied principles of *Apprendi* to a sentencing matter. Furthermore, as we have explained, "[t]o qualify as a 'watershed' rule of criminal procedure, the rule must not only improve the accuracy with which defendants are convicted or acquitted, but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Mora*, 293 F.3d at 1218-19 (internal quotations omitted). Finally, we held in *Price* that *Blakely* does not affect the determination of a defendant's guilt or innocence; rather, it addresses only how a court imposes a sentence once a defendant has already been convicted. *See Price*, 400 F.3d at 848. The same reasoning applies to *Booker*, which merely extends the logic of *Blakely* to the Federal Sentencing Guidelines. *See, e.g., McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) (holding the *Booker* rule is "not a 'watershed' change"); *Humphress,* 398 F.3d at 855 ("The Supreme Court has never held that a new rule of criminal procedure falls within *Teague*'s second exception. We hold that *Booker*'s rule does not either.") (internal quotations omitted); *Guzman*, 404 F.3d at 143-44; *Varela v. United States*, 400 F.3d 864, 867-68 (11th Cir. 2005) (per curium). Thus, like *Blakely*, *Booker* does not apply retroactively on collateral review, and Bellamy's claim may not be brought in this initial habeas review under 28 U.S.C. § 2255.

Accordingly, we DENY COA and DISMISS the case. We also grant Bellamy's motion to proceed in forma pauperis.